UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                :
MUSTAFA OZSUSAMLAR,              :
                                                :
                        Petitioner,     :                    09 Civ. 3501
                                                :                    Opinion & Order
        -against-                       :
                                                :
UNITED STATES OF AMERICA,    :
                                                :
                        Respondent.   :
------------------------------------------------------X

WOOD, U.S.D.J.:

In 2007, Petitioner Mustafa Ozsusamlar ("Petitioner") was convicted on six counts arising out of a scheme to provide fraudulent identification documents to illegal aliens. In April 2009, Petitioner filed the instant petition for habeas corpus pursuant to 28 U.S.C. § 2255 ("Section 2255"), asking the Court to vacate, set aside, or correct his sentence on the grounds that: (1) Petitioner's trial counsel provided ineffective assistance; (2) his sentence was unreasonable; (3) his Sixth Amendment right to a speedy trial was violated; and (4) his Miranda rights were violated.

For the reasons set forth below, the Court DENIES Petitioner's habeas corpus petition.

I.    Background

In late 2001, the Federal Bureau of Investigation ("FBI") was investigating Petitioner and his colleague, Rafat Ozoglu, on suspicion that the two men were running a scheme to provide illegal aliens with Washington D.C. drivers' licenses. As part of the scheme, Petitioner and Ozoglu would drive customers from New York to W.D.C., help them fill out applications for W.D.C. licenses, and then turn those applications over to an employee at the W.D.C. DMV.

1

Petitioner had bribed the employee to provide drivers' licenses without following normal DMV security procedures.

On December 5, 2001, Petitioner had driven a group of customers to W.D.C. in a van, and was parked near the DMV helping his customers fill out applications. A man who passed by the van informed W.D.C. Police Officer Justin Branson, who was standing nearby, that he thought something suspicious was taking place inside the van. Officer Branson approached the van and introduced himself to Petitioner. Petitioner was visibly nervous, and he and his passengers tried to conceal documents from Officer Branson and to escape the van. Officer Branson became suspicious and called for additional law enforcement assistance. The officers gathered physical evidence from the van and took statements from Petitioner and some of the passengers. Later that day, Petitioner and his customers were arrested.

Petitioner's trial took place in May 2005.[1] At trial, the Government introduced substantial evidence of Petitioner's involvement in the scheme. The Government called a number of witnesses, including Officer Branson; Immigration and Naturalization Service ("INS") Special Agent Mark Leeper, to whom Petitioner had confessed certain aspects of his participation in the scheme; and a number of witnesses who were cooperating with the FBI's investigation and had personal knowledge of Petitioner's involvement in the scheme. Significant documentary evidence was introduced, including a letter Petitioner had written while he was in

---

[1] Prior to his trial, Petitioner moved to suppress the evidence obtained through his encounter with Officer Branson, on the ground that he had been subjected to unreasonable search and seizure in violation of his Fourth Amendment rights. The Court held an evidentiary hearing on Petitioner's motion, at which Officer Branson testified. The Court found that Officer Branson's approach of the van and initial conversation with Petitioner was non-threatening, and that this portion of their encounter was consensual. The encounter became an investigative detention once Officer Branson called for backup and began asking for documents, but the suspicious activity in the car gave Officer Branson probable cause for conducting the investigation. The Court concluded that the actions of Officer Branson and the other officers did not violate Petitioner's Fourth Amendment rights and that the evidence gathered was admissible at trial.

prison that recounted details of the December 5 van trip to W.D.C; records of numerous van rentals by a person using Petitioner's alias; and hundreds of W.D.C. drivers' license applications filled out in Petitioner's handwriting. On May 14, 2005, the jury returned a verdict, finding Petitioner guilty on all six counts of the Indictment.

In advance of sentencing, the U.S. Probation Office calculated that pursuant to the Sentencing Guidelines, Petitioner had an offense level of thirty-five, which took into account, among other things, Petitioner's leadership role in the offenses (four levels), the value of the bribes exceeding $1 million (sixteen levels), and the fact that the scheme involved transporting more than 100 illegal aliens (nine levels). Petitioner had a previous federal conviction for harboring and transporting aliens, and had run the instant scheme while on supervised release. Accordingly, the Probation Office placed him in Criminal History Category III. Based on the offense level of thirty-five and the Criminal History Category III, Petitioner's Sentencing Guidelines range was 210 to 236 months.

At the sentencing proceeding, Petitioner's counsel objected to a number of the factors the Probation Office used to calculate the offense level. Counsel also informed the Court of relevant personal factors pursuant to 18 U.S.C. 3553(a) that could provide a basis for mitigating Petitioner's sentence, including Petitioner's advanced age and charitable work. Petitioner made a statement to the Court, in which he emphasized his poor health and charitable work and professed his innocence. Petitioner argued that he deserved credit for assistance he provided the Government and for assistance he was providing the INS in a separate investigation.

The Government argued that Petitioner's sentence should not be reduced on the basis of information he provided the Government, noting that some of the information Petitioner had provided was false, and that no one had been prosecuted as a result of Petitioner's assistance. In

addition, the Government contended that Petitioner's assistance to the INS was part of a separate deal and should not provide a basis for a reduced sentence.

The Court agreed with the Probation Office's Guidelines calculation, and made factual findings supporting it. The Court stated that there was no basis for crediting Petitioner's assistance to the Government. The Court considered the relevant sentencing factors laid out in 18 U.S.C. § 3553, and noted Petitioner's charitable work and age. The Court then sentenced Petitioner to a term of 235 months of incarceration to be followed by three years of supervised release.[2]

Following his sentencing, Petitioner filed a timely notice of appeal. On appeal, Petitioner challenged his conviction on the grounds that the Court erred in denying his motion to suppress the evidence obtained from his encounter with Officer Branson. On May 22, 2008, the Second Circuit issued a summary order affirming the Court's decision.

On March 6, 2009, the Petitioner filed the instant petition for habeas corpus, asking the Court to vacate, set aside, or correct his sentence on the grounds that: (1) his trial counsel provided ineffective assistance; (2) his sentence was unreasonable; (3) delays in his trial violated his Sixth Amendment right to a speedy trial; and (4) the officers who arrested him questioned him without reading him his Miranda rights.

For the reasons set forth below, the Court DENIES Petitioner's habeas corpus petition.

---

[2] During the course of his trial and sentencing, Petitioner filed numerous pro se motions to dismiss the case on various grounds, including that the Government had suborned perjury and withheld evidence from the Grand Jury, and that delays in the trial violated the Speedy Trial Act. The Court dismissed all of these motions as meritless. See Sentencing Tr., 8-9 (Jan. 29, 2007).

4

II. Analysis

   A. Petitioner's Claim for Ineffective Assistance of Trial Counsel

      1. Legal standard

To prevail on a claim for ineffective assistance of counsel, a defendant must demonstrate that: (1) his counsel's performance "fell below an objective standard of reasonableness"; and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). Under the first prong of the Strickland test, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. There is a "strong presumption that [a lawyer's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. To prove that counsel's performance was objectively unreasonable, a defendant "must overcome the presumption that, under the circumstances, [a] challenged action might be considered sound trial strategy." Id. at 689 (internal quotations omitted).

      2. Application

Petitioner's ineffective assistance of counsel claim is without merit. Petitioner argues that his trial counsel provided ineffective assistance because he failed to present mitigating evidence at sentencing, and did not inform the Government that Petitioner was serving as an informant for the INS with respect to an illegal alien smuggling operation. Petitioner also claims that he told trial counsel that he could provide the Government with information about two unsolved murders, and that trial counsel did not pass this information to the Government. Petitioner asserts that if counsel had presented mitigating evidence and informed the Government of Petitioner's willingness to provide information, Petitioner would have received a reduced sentence.

The Court finds that the conduct of Petitioner's trial counsel was reasonable. Trial counsel presented mitigating evidence at sentencing, including evidence on Petitioner's charitable works, his age, and his health. It is possible that trial counsel did not give the Government the exact specifics of all the information Petitioner claimed he could provide. Petitioner and his counsel, however, did discuss with the Government the possibility of Petitioner serving as an informant. At sentencing, the Government told the Court that Petitioner had given the Government information, but that it had been either false or not useful. The Government specifically mentioned Petitioner's cooperation with the INS. It is clear, therefore, that trial counsel informed the Government of Petitioner's willingness to cooperate, and that Petitioner had an opportunity to discuss his proposed cooperation with the Government. Trial counsel's conduct was reasonable.

Moreover, Petitioner has failed to show that trial counsel's conduct caused Petitioner any prejudice. Even if counsel had informed the Government of all the details regarding Petitioner's proposed cooperation, the Government was under no obligation to accept Petitioner's cooperation. Indeed, the Government's statements at sentencing indicate that the Government was not interested in cooperating with Petitioner. Thus, trial counsel's purported failure to inform the Government of all details of Petitioner's proposed cooperation does not give rise to "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" See Rivera v. United States, 893 F.Supp. 1238, 1250 (S.D.N.Y. 1995) (quoting Strickland, 466 U.S. at 694) (finding that trial counsel's alleged failure to inform the Government that the defendant was willing to cooperate in other investigations did not prejudice defendant and render counsel's assistance ineffective).

Accordingly, Petitioner's claim that his trial counsel provided ineffective assistance is without merit. The Court dismisses Petitioner's claim.

### B. Petitioner's Remaining Claims

#### 1. Legal standard

Other than a claim for ineffective assistance of counsel, a defendant cannot litigate under Section 2255 claims that he could have raised but did not on direct appeal, unless the defendant can show either: (1) cause and prejudice; or (2) that the defendant is actually innocent of the crime for which he was convicted. Bousley v. United States, 523 U.S. 614, 622-23 (1998).

A defendant can show that there was "cause" for his failure to raise a claim on direct appeal by establishing that appellate counsel provided ineffective assistance. To prove that appellate counsel's assistance was ineffective, Petitioner must meet Strickland's two-prong test, which requires showing that counsel's conduct was (1) objectively unreasonable, and (2) prejudicial to the defendant. Strickland, 466 U.S. at 694. If a defendant argues that appellate counsel's assistance was ineffective because counsel decided not to raise a claim on appeal, the defendant must show that appellate counsel's decision "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

#### 2. Application

Petitioner did not raise his claims regarding his sentence, speedy trial right, or Miranda rights on direct appeal, and thus must establish cause and prejudice in order to bring these claims

in his habeas petition.[3] Petitioner attempts to establish cause by asserting that his appellate counsel provided ineffective assistance by not raising the claims.

The Court finds that Petitioner's claims are without merit. Appellate counsel's decision not to raise the claims was a reasonable strategic choice, and Petitioner has not established cause for his failure to raise the claims on direct appeal. The Court dismisses Petitioner's claims because they are without merit, and because he is barred from raising the claims in his habeas petition.[4]

### a. Petitioner's sentence

Petitioner asserts that the offense level and criminal history category on which his sentence was based were not properly supported, and that the sentence was unreasonable. Specifically, Petitioner argues that the evidence does not support the Court's findings that Petitioner paid over $1 million in bribes and played a leadership role in the scheme. Petitioner also asserts that the Court erred by failing to reduce his sentence on account of his age.

The Court finds that Petitioner's sentence was properly supported and reasonable. To determine Petitioner's sentence, the Court was required to: (1) determine the applicable Guidelines range; (2) consider whether a departure from the Guidelines was appropriate; and (3)

---

[3] In his habeas petition, Petitioner claims that he is innocent. Petitioner made this same claim at trial and during sentencing. Petitioner raises no new evidence or arguments in his habeas petition regarding his purported innocence. Accordingly, Petitioner has not shown that he could establish actual innocence, and thus must show cause and prejudice in order to bring his claims in his habeas petition.

[4] Petitioner also requests that the Court hold an evidentiary hearing on all of his claims, including his claim for ineffective assistance of trial counsel. Section 2255 requires that the court hold an evidentiary hearing on a prisoner's claim, unless the motions and records in the case establish that the petitioner is not entitled to relief. "It is within a district court's discretion to determine whether an evidentiary hearing is warranted." Bennet v. United States, 2004 WL 2711064, at *3 (S.D.N.Y. 2004). To obtain a hearing, "a petitioner 'must demonstrate a colorable claim,' and the court must evaluate whether a hearing would 'offer any reasonable chance of altering its view of the facts.'" Bennet, 2004 WL 2711064, at *3 (quoting Chang, 250 F.3d at 84, 86). Because the Court can determine on the basis of the record that Petitioner's claims are meritless, the Court finds that it is unnecessary to hold an evidentiary hearing.

consider the Guidelines range and the factors listed in 18 U.S.C. § 3553(a) to determine the sentence to impose. See United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). The Court took each of these steps during sentencing. In particular, the Court made specific factual findings with respect to each component determining the Guidelines range, and considered the factors in § 3553(a), including the nature and circumstances of the offense and Petitioner's charitable work and advanced age. Petitioner has raised no new evidence or arguments in his habeas petition that would lead the Court to question the decisions it made during sentencing. Petitioner's argument that his sentence was not properly supported and unreasonable is thus meritless. Therefore, appellate counsel's decision not to raise the claim on appeal does not render his assistance ineffective, and Petitioner is barred from raising the claim in his habeas petitioner. The Court dismisses Petitioner's claim.

b. Petitioner's speedy trial right

Defendant claims that delays in bringing his case to trial violated the Speedy Trial Act, 18 U.S.C. § 3161. Plaintiff was arrested on December 5, 2001 and tried in May 2005.

The Speedy Trial Act requires that a defendant be tried within seventy days of indictment. When calculating the seventy days, however, the Act permits a Court to exclude time for a variety of reasons, including for delays resulting from trial on other charges against the defendant, pretrial motions, and absence or unavailability of the defendant or an essential witness. 18 U.S.C. § 3161(h). In addition, a court can exclude time on its own initiative when it finds that doing so serves the interests of justice. 18 U.S.C. § 3161(h)(8)(A).

The Court finds that the delays in Plaintiff's trial did not violate the Speedy Trial Act. When calculating Plaintiff's trial date, the Court excluded time only for reasons permissible under the Act, including efforts by Petitioner to substitute new counsel, trial preparation,

Petitioner's travel to Washington D.C. on pending charges, and the Court's findings that a continuance with an exclusion of time under the Act served the interests of justice. Petitioner presents no new evidence or arguments that give the Court reason to reconsider its decisions that the delays were appropriate and in the interests of justice. Petitioner's speedy trial claim is thus meritless. Appellate counsel's decision not to raise the claim on appeal was reasonable, and Plaintiff is barred from raising the claim in his habeas petition.[5] The Court dismisses Petitioner's claim.

### c. Petitioner's Miranda claim

Petitioner claims that Agent Leeper, the INS Special Agent who testified at trial regarding a confession made by Petitioner, took Petitioner into custody and questioned him without first informing him of his <u>Miranda</u> rights. <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

A suspect who is in police custody is entitled to <u>Miranda</u> warnings before being interrogated. <u>Thompson v. Keohane</u>, 516 U.S. 99, 100-01 (1995). Any statements made by a suspect prior to issuance of the <u>Miranda</u> warnings are not admissible at trial. <u>Oregon v. Eldstad</u>, 470 U.S. 298, 304 (1985). However, if a statement taken in violation of a defendant's <u>Miranda</u> rights is cumulative of other, admissible evidence, then the admission of that statement at trial is harmless error and does not give rise to a <u>Miranda</u> claim. <u>See</u> <u>Nova v. Bartlett</u>, 211 F.3d 705, 709 (2d Cir. 2000).

The Court finds that Petitioner has not established a claim for violation of his <u>Miranda</u> rights. Agent Leeper was at the van with Officer Branson on December 5, 2001. He took Petitioner and the other van passengers to the INS office for further questioning, and then

---

[5] Petitioner also argues that his trial counsel provided ineffective assistance because he did not move to dismiss the case on speedy trial grounds. Trial counsel's decision not to raise Petitioner's meritless speedy trial claim was a reasonable strategic choice, and thus did not render trial counsel's assistance ineffective.

arrested them. At trial, Agent Leeper stated that he interviewed Petitioner at the van, and that Petitioner told him his name and that he had overstayed his visa. Agent Leeper then testified about a statement Petitioner made at the INS office, in which he confessed to transporting people to Washington D.C. on December 5 to obtain false driver's licenses, and that he provided false identification to Officer Branson. Agent Leeper stated that prior to questioning Petitioner at the INS office, he read Petitioner his <u>Miranda</u> rights, and that Petitioner said that he understood his rights and wished to waive them and speak to Agent Leeper. Agent Leeper also testified that a translator translated Agent Leeper's recitation of Petitioner's <u>Miranda</u> rights into Turkish, to ensure that Petitioner understood them.

In his habeas petition, Petitioner asserts that Agent Leeper questioned him prior to reading him his <u>Miranda</u> rights. Petitioner does not identify any specific statements admitted at trial that he made before receiving the <u>Miranda</u> warnings. In particular, he does not claim that his statement at the INS office was made before Agent Leeper informed him of his <u>Miranda</u> rights. Petitioner's broad assertions do not give the Court reason to question Agent Leeper specific, sworn testimony at trial that he issued the <u>Miranda</u> warnings before questioning Petitioner at the INS office.

Agent Leeper did not testify that he read Petitioner his <u>Miranda</u> rights before interviewing him at the van. During the van conservation, however, Petitioner stated only his name and that he had overstayed his visa. At trial, the Government presented significant documentary evidence confirming Petitioner's identity and his status as an illegal immigrant. There was also significant evidence presented confirming Petitioner's confession at the INS office, including a letter written by Petitioner that recounted the same facts confessed to Agent

11

Leeper. Therefore, even if Petitioner's statements were taken in violation of his <u>Miranda</u> rights, their admission at trial was harmless and does not give rise to a <u>Miranda</u> claim.

Accordingly, Petitioner's <u>Miranda</u> claim is meritless. Appellate counsel's decision not to raise the claim on appeal was reasonable, and Petitioner is barred from raising the claim in his habeas petition.

In addition, Petitioner cannot show that admission of Agent Leeper's testimony was prejudicial. Petitioner must establish prejudice in order to bring a claim in a habeas petition that he did not raise on direct appeal. See <u>Bousley</u>, 523 U.S. at 622-23 (explaining that a petitioner must establish cause <u>and</u> prejudice for a procedural default). To establish prejudice, Petitioner must show that admission of Agent Leeper's testimony "worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Holland v. Scully</u>, 797 F.2d 57, 69 (2d Cir. 1986) (emphasis in original) (internal quotations omitted).

As discussed above, there was significant additional evidence confirming the statements Petitioner made to Agent Leeper. Admission of Agent Leeper's testimony, therefore, did not actually and substantially disadvantage Petitioner, and Petitioner has failed to establish prejudice. See <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 245 (2d Cir. 1998) (finding that district court's admission of statements taken in violation of defendant's <u>Miranda</u> rights was not prejudicial because the statements were substantially the same as later, admissible testimony). Accordingly, Plaintiff is barred from raising the <u>Miranda</u> claim in his habeas petition.

The Court dismisses Petitioner's <u>Miranda</u> claim because it is without merit and because Petitioner is barred from raising it in his habeas petition.

III. Conclusion

For the reasons set forth above, the Court DENIES Petitioner's motion to vacate, set aside, or correct his sentence pursuant to Section 2255. A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.

The Clerk of the Court is ordered to close this case; any pending motions are moot.

SO ORDERED.

DATED: New York, New York
January 7, 2010

*/s/ Kimba M. Wood*
KIMBA M. WOOD
United States District Judge